RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HATEM ATAYA, M.D.,

*Defendant-Appellant.*

No. 16-2611

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cr-20351-3—Sean F. Cox, District Judge.

Decided and Filed:  March 2, 2018

Before:  MERRITT, MOORE, and BUSH, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Michael J. Stengel, STENGEL LAW FIRM, Memphis, Tennessee, for Appellant.
Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court in which MERRITT, J., joined.  BUSH, J.
(pp. 11–16), delivered a separate dissenting opinion.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Hatem Ataya pleaded guilty to one count of
conspiracy to commit healthcare fraud and wire fraud.  His plea agreement included a waiver of
his appeal rights.  During his plea colloquy, Ataya acknowledged that he understood that he was
waiving these rights.  The district court, however, failed to comply with Federal Rule of Criminal

Procedure 11(b)(1)(J), (K), (L), and (O) during the colloquy. Ataya now seeks to vacate his conviction on the grounds that his plea was unknowing due to these Rule 11 omissions, and asserts that the appellate-waiver provision in his plea agreement is unenforceable because of these same errors. For the following reasons, we hold that Ataya's appellate waiver is unenforceable, deny the government's motion to dismiss, and **REVERSE** his conviction. We **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

In March 2016, Ataya pleaded guilty to one count of conspiracy to commit healthcare fraud and wire fraud, in violation of 18 U.S.C. § 1349. R. 145 (Plea Agreement at 1) (Page ID #979). Ataya was a doctor in Michigan who operated Hatem M. Ataya, M.D., P.C. R. 245 (Plea Hr'g Tr. at 12) (Page ID #1943). Between 2009 and 2015, Ataya would refer Medicare beneficiary patients to entities owned or controlled by one of his co-defendants, purportedly for home health and hospice services that were, at times, "neither medically necessary nor provided." *Id.* at 12–13 (Page ID #1943–44). These referrals enabled Ataya's co-defendant to submit false and fraudulent claims to Medicare. *Id.* at 13 (Page ID #1944). In exchange for his referrals, Ataya received kickbacks. *Id.* at 12 (Page ID #1943).

At Ataya's plea hearing, the district court failed to address a number of considerations that are required under Federal Rule of Criminal Procedure 11(b)(1). First, "the district court did not inform Ataya, as Rule 11 requires, that the plea agreement required him to pay restitution and a special assessment and to forfeit the proceeds of his fraud." *United States v. Ataya*, 869 F.3d 401, 402 (6th Cir. 2017) (citing Fed. R. Crim. P. 11(b)(1)(J), (K), and (L)). Second, "neither the plea agreement nor the district court seems to have mentioned that Ataya, who became a naturalized citizen after the alleged frauds, might face denaturalization as a result of his conviction." *Id.* (citing Fed. R. Crim. P. 11(b)(1)(O)). The district court did, however, review with Ataya the provision of his plea agreement in which he waived his right to appeal and confirmed that Ataya had no questions about the appellate waiver. R. 145 (Plea Agreement at 11, ¶ 9) (Page ID #989); R. 245 (Plea Hr'g Tr. at 14–15) (Page ID #1945–46). The waiver states, in part: "Defendant waives any right he may have to appeal his conviction on any grounds. . . .

This waiver shall not be construed to bar a claim by Defendant of ineffective assistance of counsel." R. 145 (Plea Agreement at 11–12, ¶ 9) (Page ID #989–90).

The district court subsequently sentenced Ataya to ninety-seven months' imprisonment, followed by three years' supervised release. R. 205 (J. at 2–3) (Page ID #1595–96). Ataya was also ordered to pay $4,119,711.29 in restitution, forfeit specific property, and pay a $100 special assessment. *Id.* at 5–6 (Page ID #1598–99).

Ataya appealed the judgment against him, and the government moved to dismiss on the basis of the appellate waiver. Reviewing the government's motion to dismiss, we held that "[w]hile we agree with the government that Ataya knowingly waived his appellate rights, we are not convinced that Ataya entered into the plea agreement as a whole knowingly and voluntarily." *Ataya*, 869 F.3d at 402. We instructed the parties to address two issues in their merits briefs: "whether the plea agreement and the district court adequately informed Ataya of his plea's consequences, in particular any possibility of denaturalization, and if not whether any omissions constitute plain error." *Id.* We thus left for future resolution the government's motion to dismiss. *Id.*

## II.  DISCUSSION

### A.  Waiver of the Right to Appeal

The government moved to dismiss this appeal on the basis of the appellate-waiver provision in Ataya's plea agreement. Gov't Mot. to Dismiss at 2. In response, Ataya argues that his waiver was not "knowing and intelligent," and thus it is unenforceable. Def. Resp. at 2.

"We will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily." *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017). Ataya "may challenge his waiver of appeal rights only 'on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel.'" *Id.* (quoting *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015)).

We previously held that "Ataya knowingly waived his appellate rights. His plea agreement included a broad waiver provision, and the district court confirmed that Ataya understood and accepted the waiver's consequences." *Ataya*, 869 F.3d at 402. But, [f]or an appellate waiver to be knowing and voluntary, the defendant . . . must have entered into the plea agreement as a whole knowingly and voluntarily." *Id.* Because "[a] defendant decides to waive the right to challenge his conviction in light of his understanding of the conviction's key consequences[,] [i]f he misunderstands any of those consequences, that undermines the knowingness of the appellate waiver." *Id.*

Normally, we must first determine whether a defendant's appeal is barred by an appellate-waiver provision before considering the defendant's arguments on the merits. *See, e.g., Morrison*, 852 F.3d at 490. But here Ataya's argument for why his appeal is not barred by his waiver of appeal rights is the same as why his conviction should be vacated: He did not enter into the plea agreement knowingly due to the district court's Rule 11 error. Appellant Br. at 9. Because the enforceability of the appellate waiver stands or falls with the validity of the agreement, *Ataya*, 869 F.3d at 402, we must consider whether the plea agreement as a whole was knowing and voluntary in order to determine whether Ataya's appeal is barred by his waiver. *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) ("[The defendant] is challenging the soundness of his plea allocution under Rule 11, which goes to the heart of whether his guilty plea, including the waiver of appeal, is enforceable. Thus we must determine whether the plea was valid in order to determine if appeal is permitted."); *United States v. Rollings*, 751 F.3d 1183, 1189–90 (10th Cir. 2014) (collecting cases in which courts analyzed "the totality of the plea agreement—both the appellate waiver and the plea provisions—in determining whether the plea agreement was knowing and voluntary" and collapsing the analysis of whether the appellate waiver, and thus whether the circuit court could hear the appeal on its merits, into an analysis of the merits); *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (same); *cf. In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[I]n cases where a defendant argues that his plea was not knowing or voluntary . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself.").

**B. Standard of Review**

Because Ataya "let[] Rule 11 error[s] pass without objection in the trial court . . . [he] has the burden to satisfy the plain-error rule and . . . [we] may consult the whole record when considering the effect of any error on substantial rights." *United States v. Vonn*, 535 U.S. 55, 58–59 (2002). Plain-error review "involves four steps, or prongs." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

> First, there must be an error or defect—some sort of [d]eviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*Id.* (alterations in original) (internal citations and quotation marks omitted). The third prong— that the error affected the defendant's substantial rights—"in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). "However, for a defendant seeking reversal of his conviction, plain error requires a heightened showing of prejudice."[1] *United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007).

To "obtain[] relief for an unpreserved Rule 11 failing . . . a defendant is obliged to show a reasonable probability that, but for the error, he would not have entered the plea."[2] *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). "A defendant must thus satisfy the

---

[1]We note that this "heightened showing of prejudice" applies when a defendant is seeking to vacate his guilty plea. It does not apply to the plain-error standard applied when a defendant seeks merely to void an appellate waiver. *Compare, e.g.*, *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005), *with United States v. Mobley*, 618 F.3d 539, 544 (6th Cir. 2010). Because here we consider both the appellate-waiver provision and the entirety of the plea agreement together, we apply the more rigorous articulation of the plain-error standard of review.

[2]The government elides a key modifier in its statement of this third requirement. Appellee Br. at 9. Ataya does not have to demonstrate definitively that, but for the Rule 11 error, he would have proceeded to trial. Rather, Ataya must show "a *reasonable probability* that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 83 (citation and internal quotation marks omitted). If the defendant can meet this showing, then "'where the error involves the defendant's state of mind . . . the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew' if he chooses, or proceed to trial." *United States v. Reader*, 254 F. App'x 479, 482 (6th Cir. 2007) (quoting *United States v. Tunning*, 69 F.3d 107, 115 (6th Cir. 1995)).

## C. Knowingness of Ataya's Guilty Plea as a Whole

Ataya argues that his conviction should be vacated because his guilty plea was not knowing and voluntary due to his lack of notice regarding the immigration consequences of his plea. Appellant Br. at 7, 9, 13. Ataya's argument that his plea was uninformed is entangled with his argument that the district court made a Rule 11 error.[3] Appellee Br. at 12; Appellant Reply Br. at 1–2.

Federal Rule of Criminal Procedure 11(b)(1)(O) instructs the district court "to inform the defendant of, and determine that the defendant understands . . . that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." This provision was added to the rules

---

[3]The government argues that we should hold that Ataya has waived his claim that his guilty plea was unknowing, separate and apart from the Rule 11 error, because Ataya did not develop the issue in his appellate brief. Appellee Br. at 12. Ataya contests the government's characterization of his arguments. Appellant Reply Br. at 1. We do not need to decide whether Ataya waived this portion of his argument, however, because to the extent Ataya argues that his guilty plea was unknowing under the Fifth Amendment, this argument is unavailing. We have previously held, in a case decided prior to *Padilla v. Kentucky*, 559 U.S. 356 (2010), that failure by the district court to inform a defendant of potential immigration consequences does not entitle the defendant to a vacation of his conviction because the district court—as opposed to defense counsel—is not under a constitutional obligation to inform the defendant of these potential consequences. *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002). Subsequent to the Supreme Court's decision in *Padilla*, two panels of this court have held in unpublished decisions, in cases not involving a Rule 11(b)(1)(O) omission, that *El-Nobani*'s holding survives *Padilla* because the latter "bear[s] on counsel's Sixth Amendment obligations and not on a district judge's obligation to ensure a plea's validity under the Due Process Clause." *United States v. Rodriguez-Penton*, 547 F. App'x 738, 739–40 (6th Cir. 2013); *see also United States v. Rodriguez-Gonazales*, 543 F. App'x 532, 533–34 (6th Cir. 2013). At least three of our sister circuits have similarly noted this distinction. *United States v. Youngs*, 687 F.3d 56, 61–63 (2d Cir. 2012); *United States v. Nicholson*, 676 F.3d 376, 381 n.3 (4th Cir. 2012); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1240 (9th Cir. 2011). This case is different, however, because the district court has an obligation under the Federal Rules of Criminal Procedure, which it breached.

in 2013, following the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Fed. R. Crim. P. 11(b)(1)(O) Advisory Committee's Note. "The amendment requires the court to include a *general statement that there may be immigration consequences of conviction* in the advice provided to the defendant before the court accepts a plea of guilty or nolo contendre." *Id.* (emphasis added). Rule 11(b)(1)(O) mandates that the district court provide this "generic warning" to "*every defendant*, without attempting to determine the defendant's citizenship."[4] *Id.* (emphasis added). Thus, it is error if the district court fails to provide this warning during any defendant's plea colloquy.

The government concedes that the district court in this case did not comply with Rule 11(b)(1)(O) and that, therefore, Ataya has met the first two prongs of plain-error review; in other words, the failure of the district court to give the warning required by Rule 11(b)(1)(O) was an unwaived error and it was clear or obvious. Appellee Br. at 9. Instead, the government argues that Ataya cannot meet the third step of plain-error review: the government asserts that Ataya does not demonstrate that he would not have pleaded guilty but for the district court's Rule 11 error. Appellee Br. at 10.

Ataya, a native of Syria, is a naturalized American citizen. Pre-Sentence Report at 3. His conviction exposes him to the possibility of denaturalization under 8 U.S.C. § 1101(f)(3) and (8). Appellant Br. at 12; *Ataya*, 869 F.3d at 402. Ataya argues that he had no notice—from any source—that his guilty plea might result in his denaturalization and that, if the district court had complied with Rule 11(b)(1)(O), it is "reasonably likely" he would not have pleaded guilty. Appellant Br. at 13. This argument requires the reasonable inference that, if the district court

---

[4]The dissent argues that the warning required under Rule 11(b)(1)(O) is narrow and therefore inapplicable to Ataya, Dissent Op. at 11–12, but this characterization ignores the Advisory Committee's commentary. This is a *general* warning that must be given to *every* defendant. And this makes the dissent's hypothetical situation about restitution inapposite to this case. Dissent Op. at 12–13. Rule 11(b)(1)(K) requires the district court to inform the defendant about its authority to order restitution. Restitution in this context is "[c]ompensation for loss; esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation." *Restitution*, BLACK'S LAW DICTIONARY (10th ed. 2014). The Advisory Committee's commentary does not instruct district courts to provide a generic warning to the defendant about any potential *civil* liability in its warning about *criminal* restitution. Thus, the dissent's hypothetical defendant cannot use this opinion to argue that a failure by the district court to provide a warning about consequences not covered by Rule 11 allows him to withdraw his guilty plea. But a defendant like Ataya, who was deprived of a warning mandated by Rule 11 that is relevant to his situation, may argue that his guilty plea was not knowing and voluntary.

had properly informed Ataya that a non-United States citizen might face immigration consequences from a guilty plea, Ataya would be on notice that he might face adverse immigration consequences as a naturalized United States citizen and that, once on notice, it is reasonably likely that he would not have pleaded guilty.

The Supreme Court has recognized that American citizenship provides "priceless benefits." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). The consequences of denaturalization are:

> more serious than a taking of one's property, or the imposition of a fine or other penalty. For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men.

*Id.* Furthermore, the Supreme Court has repeatedly acknowledged that "preserving [an individual's] right to remain in the United States may be more important to [that individual] than any potential jail sentence." *Lee v. United States*, 137 S. Ct. 1958, 1968 (2017) (quoting *Padilla*, 559 U.S. at 368).

In addition to the inherently severe consequences of denaturalization on any individual in general, there is sufficient contemporaneous evidence in the record demonstrating a reasonable probability that Ataya in particular would not have pleaded guilty if he had notice of the potential adverse immigration consequences. At his sentencing hearing, Ataya articulated a strong, and very reasonable, aversion to his former homeland of Syria. R. 198 (Sent. Hr'g Tr. at 22) (Page ID #1544). His relatives who had remained in Syria after he emigrated are now displaced in numerous other countries due to the ongoing civil war. *Id.* Furthermore, Ataya is the father of three minor children who reside in the United States, is an active parent, and is the family's breadwinner. *Id.* at 19, 22 (Page ID #1541, 1544); Pre-Sentence Report at 11. Considering the especially serious consequences of denaturalization on Ataya and his family, Ataya has shown that there is a "reasonable probability" that, but for the district court's failure to comply with

Rule 11(b)(1)(O), he would not have entered the guilty plea.[5] *Dominguez Benitez*, 542 U.S. at 76. Thus, Ataya has met the third prong of the plain-error test.

Because Ataya has satisfied the first three prongs of plain-error review, it is within our discretion to vacate his conviction "if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (alteration in original). The Advisory Committee on Rules of Criminal Procedure adopted Rule 11(b)(1)(O) after the Supreme Court's decision in *Padilla* because it was "good policy." Fed. R. Crim. P. 11(b)(1)(O) Advisory Committee's Note. This change in the Rules was not mandated by the decision in *Padilla*; rather, the addition is evidence that the Committee believed that knowledge about immigration consequences would enhance "the fairness, integrity or public reputation" of plea colloquies. Rule 11 is designed to prevent defendants from making unknowing or involuntary decisions. A plea colloquy that does not put the defendant on notice that pleading guilty will expose him to the loss of his American citizenship harms the fundamental purpose of the judicial proceeding.

---

[5]The dissent argues that Ataya would have probably lost if he had chosen to go to trial, and therefore he cannot show that he would have not pleaded guilty if he had been provided the appropriate warnings during his plea colloquy. Dissent Op. at 13–14. In addition to making unsupported assumptions about what evidence the government would have introduced against Ataya at trial, Dissent Op. at 14 n.4, the dissent assumes that likelihood of success at trial is a determinative factor for all defendants by relying on language from the Supreme Court's decision in *Lee v. United States*, Dissent Op. at 13. But the Supreme Court, in *Lee v. United States*, explicitly recognized that we should focus "on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." *Lee*, 137 S. Ct. at 1966.

> A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice [under *Strickland*] from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.

> But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. When those consequences are, from the defendant's perspective similarly dire, even the smallest chance of success at trial may look attractive. . . .

*Id.* (internal citations omitted). In *Lee*, the defendant "allege[d] that avoiding deportation was *the* determinative factor for him . . . . He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." *Id.* at 1967. Ataya, like Lee, is arguing that he would have thrown that Hail Mary if he had been fully informed of the consequences of pleading guilty.

### III. CONCLUSION

The district court's failure to comply with Rule 11(b)(1)(O) was plain error.[6] Because the plea agreement is not valid, neither is the appellate waiver contained within it; they both fall together. For the foregoing reasons, we hold that the appellate-waiver provision of Ataya's plea agreement is unenforceable, deny the government's motion to dismiss, **REVERSE** the defendant's conviction, and **REMAND** for further proceedings consistent with this opinion.

---

[6]The district court also failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(J), (K), and (L) during the plea colloquy because the district court did not advise Ataya of the special assessment, restitution, and forfeiture obligations imposed upon him by the plea agreement. *Ataya*, 869 F.3d at 402. However, as Ataya concedes in his brief, Appellant Br. at 10, his plea agreement included this information and Ataya acknowledged reading and understanding the agreement, R. 145 (Plea Agreement at 6–10, 15, 26–28) (Page ID #984–988, 993, 1004–06). Thus, although the district court's failure to comply with Rule 11(b)(1)(J), (K), and (L) was error that was clear and obvious, it did not affect Ataya's substantial rights because the plea agreement served as a "functional safeguard" informing Ataya of these financial obligations. *Murdock*, 398 F.3d at 497; *United States v. Cohen*, 515 F. App'x 405, 409 (6th Cir. 2013). Consequently, Ataya cannot prove plain error arising from these Rule 11 omissions.

---

**DISSENT**

---

JOHN K. BUSH, Circuit Judge, dissenting.  When a person pleads guilty, his world is turned upside down.  Because the plea surrenders certain constitutional rights, it must be voluntary and intelligent.  And if the plea is in federal court, the defendant must be told of particular consequences as required by Federal Rule of Criminal Procedure 11.  This recital helps ensure that the defendant knowingly pleads of his own free will.  But the sentencing court need not tell the defendant all the ways in which the plea could change his life.  *See, e.g., King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) ("[T]he trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea.").

The majority holds that a United States citizen's substantial rights may be affected by the district court's failure to read a warning that speaks only to "a defendant who is *not* a United States citizen."  Fed. R. Crim. P. 11(b)(1)(O) (emphasis added).  The omitted warning admonishes that a *non-citizen* "may be removed from the United States, denied citizenship, and denied admission to the United States in the future."  *Ibid.*  The warning says nothing about denaturalization.  Yet the majority concludes that we must allow the defendant to withdraw his plea because the omitted warning could have prompted him to think of denaturalization consequences and because, had he done so, there is a reasonable probability that he would have rejected the plea agreement.

I disagree for two reasons.  First, because the warning by its plain terms does not apply to United States citizens like Ataya, I do not agree that the failure to warn affected Ataya's substantial rights.  A warning that speaks only to *non-citizens* does not make *citizen*-defendants aware of risks to which only citizens are susceptible, so it is not "reasonably probable" that Ataya would have proceeded to trial but for the failure to warn.  *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).  Second, even if the warning would have made Ataya aware of the risk of denaturalization, the record still fails to support a reasonable probability that he would have rejected the plea agreement if aware of that risk.  Respectfully, I dissent.

## I

The district judge's failure to recite all the consequences for which Rule 11 requires warnings is not necessarily a reason to allow the defendant to withdraw a guilty plea. To be sure, a federal sentencing court is always in error when it fails to issue the proper Rule 11 warnings. But not all errors, however easy to avoid, warrant reversal: under plain-error review, the district court's noncompliance must affect the defendant's substantial rights. The error must have affected the defendant such that it is reasonably probable "that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 82.

As the majority acknowledges, *see* Maj. Op. 6 n.3, the Constitution does not require a sentencing court to warn of denaturalization, *see El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002), nor does Rule 11 require such a warning. By omitting such a requirement, the drafters of Rule 11 made a policy decision that governs our application of the Rule.[1] Given that Ataya had no right under Rule 11 to be advised by the sentencing judge of the immigration-law consequences of the plea that *did* apply to him, his substantial rights were not affected by the judge's failure to warn about immigration-law consequences that did *not* pertain to him. Indeed, the Rule 11(b)(1)(O) warning, had it been given, could have been counterproductive: because the warning mentions only non-citizens, it is possible that Ataya would have understood the warning as giving an implicit (albeit false) assurance that there was no risk of adverse immigration consequences to him, a United States citizen.

There is good reason not to craft a new rule, as the majority opinion implicitly does, that allows a defendant to withdraw a plea based on the failure to read an inapplicable warning. Consider, for example, an analogous situation in which a district court fails to give a defendant the Rule 11 warning about "the court's authority to order restitution," but does so in a case in

---

[1]The risk of denaturalization is not the only significant consequence omitted from the Rule 11 warnings. For example, under Rule 11, sentencing judges need not "warn defendants pleading guilty that they may lose their right to vote, to be a juror, to possess a firearm, to obtain professional licenses, student loans, or future employment opportunities." D. Brock Hornby, *Over Ruled*, 21 Green Bag 2d 17, 19 (2017) (citing CSG Justice Center, *National Inventory of Collateral Consequences of Convictions*, niccc.csgjusticecenter.org (last visited Aug. 23, 2017); Margaret Colgate Love et al., Collateral Consequences of Criminal Convictions: Law, Policy & Practice §§ 2:1-79 (2016)). Nor must judges warn of losing such things as "access to public housing and rental subsidies, welfare and veterans' benefits, government pensions, . . . drivers' licenses, [and] parental rights." *Id.* at 19 n.10 (citing Hornby, *supra*).

which the district court does not order any restitution. So far? No harm, no foul: the warning should have been given, but the failure to warn has not affected the defendant's substantial rights. But presume that subsequently, the defendant learns that he is at risk of *civil* liability—a risk that is not cautioned against in the Rule 11 warnings but that is, the defendant may argue, close enough to the risk of a restitution order that the failure to warn of *that* risk affected his substantial rights. May the defendant now withdraw his guilty plea on the grounds that, if only the sentencing judge had warned him about restitution, he would have been on notice as to the risk of civil liability, thus making his plea involuntary? The answer should be no. But it is not a stretch to see how the majority's opinion today could be used to support, if not compel, an affirmative answer to that question in a future case.

## II

Even assuming the Rule 11(b)(1)(O) warning would have made Ataya aware of the risk of denaturalization, I part ways with the majority's assertion that the record before us demonstrates that Ataya has met his burden to prove that there is a "reasonable probability" that, if only the district court had provided the warning, he would not have pleaded guilty. *See Dominguez Benitez*, 542 U.S. at 76. The Supreme Court has cautioned us that we "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded . . . [but] should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).**[2]** Weighing Ataya's contemporaneous reasons for accepting the plea agreement against his reasons for proceeding to trial shows that he has failed to meet his burden.

When considering Ataya's reasons for accepting the plea, we must be aware that because "defendants obviously weigh their prospects at trial in deciding whether to accept a plea," and because a "defendant without any viable defense will be highly likely to lose at trial[,] . . . a defendant facing such long odds will *rarely* be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Id.* at 1966 (emphasis added). When we look to the entire record, as we may do when determining the likelihood that a

---

**[2]***Lee* was an ineffective-assistance-of-counsel case, but its reasoning applies equally here.

defendant would have rejected a plea agreement, *see United States v. Vonn*, 535 U.S. 55, 59 (2002), it is apparent that had Ataya forgone the benefits of his plea agreement,[3] he very likely would have lost at trial.[4] This is not that "rare" case noted in *Lee*.[5]

We weigh these considerations against those Ataya would have had for rejecting the plea agreement, had he known about the potential denaturalization risk. Because, as Ataya concedes, "the record is completely silent as to potential immigration consequences," Appellant's Br. 14, or indeed any weighted preferences Ataya may have had concerning denaturalization and his plea agreement, the majority cites general considerations, including the seriousness of denaturalization and the severity of the conflict in Ataya's native Syria.[6]

Denaturalization is a serious consequence, but the likelihood of Ataya's being denaturalized is unclear. Unlike removal in the case of a non-citizen, which is often a *mandatory and automatic* consequence of a guilty plea, *see* 8 U.S.C. § 1227(a), denaturalization requires the initiation of a suit by the United States against Ataya—and it requires the United States to *win* that suit.[7] More importantly, whatever motivational force the fear of denaturalization may have had for Ataya, the instant case could not have materially added to that force, for when Ataya

---

[3]Accepting the plea resulted in the government's dropping a charge under 18 U.S.C. § 371 and Ataya's receiving a three-level reduction in his offense level, which reduced his Guidelines range by roughly three years of imprisonment.

[4]Ataya's four codefendants, who had already pleaded guilty, were presumably available to testify against Ataya had he chosen to go to trial. And, among other evidence, the government had at its disposal taped conversations in which Ataya admitted, in so many words, to engaging in fraudulent activity.

[5]Compare the facts here with those in *Lee*, in which the defendant and his trial attorney both testified that the defendant would have gone to trial had he been aware of the immigration consequences of his plea and the defendant told the trial judge that he would not want to plead guilty if it could result in his being deported. *See Lee*, 137 S. Ct. at 1967–68.

[6]The majority also mentions Ataya's relationship with his family, but this relationship is not so unique as to put Ataya in the class of "rare" cases in which prejudice can be shown.

[7]Denaturalization is a consequence that comes neither automatically nor speedily. *See* 8 U.S.C. § 1451(e) (making denaturalization automatic for conviction under 18 U.S.C. § 1425 only); *see, e.g.*, *United States v. Al-Sibai*, 599 F. App'x 251 (6th Cir. 2015) (more than two years passed between the government's initiating a denaturalization suit and the Sixth Circuit's denying defendant's appeal). Civil denaturalization proceedings are initiated only when the United States Attorney for the district in which a naturalized citizen resides determines that she has received an affidavit showing good cause to initiate denaturalization proceedings, 8 U.S.C. § 1451(a), and even then, the citizen is afforded both full protections of a civil trial in which the government is held to a heightened burden of proof and the right to appeal any loss at the trial level, *see Kungys v. United States*, 485 U.S. 759, 772 (1988) (holding that the government must meet its burden with "clear, unequivocal, and convincing" evidence).

accepted his plea deal, he was already scheduled to stand trial in state court for multiple counts of delivering a controlled substance and delivering a controlled substance causing death, convictions of which would have subjected him to the same possibility of denaturalization.[8] *See United States v. Jean-Baptiste*, 395 F.3d 1190, 1191 (11th Cir. 2005) (holding that engaging in a narcotics-distribution conspiracy prior to being naturalized, and being convicted post-naturalization, are sufficient grounds for denaturalization).

Absent any evidence in the record that accepting this plea agreement created a real, significantly additional risk of denaturalization, I cannot conclude that Ataya would have considered this attenuated possibility to be so determinative as to create a reasonable probability that, but for the district court's failure to give the Rule 11(b)(1)(O) warning, he would not have pleaded guilty.

And while the conflict in Syria is indeed serious, Ataya has not shown that denaturalization would require his return to Syria. Even were he to be denaturalized, Ataya's ties to other countries would likely provide him with alternatives. The record reveals that Ataya has immediate family in Egypt (where his parents and four siblings reside), Sweden (where two siblings reside), and the United Arab Emirates (where one sibling resides). So even if he were denaturalized, the probability of which is unclear, it is far from certain that he would then face exile to Syria specifically.

In short, Ataya would almost certainly have lost at trial, he received substantial benefit from accepting the plea agreement, and the danger of denaturalization is uncertain and remote. To the extent that he faces a risk of denaturalization, that risk already existed in large part before the plea because of the pending state charges. Even if we could hold that it is reasonable to infer that the appropriate Rule 11(b)(1)(O) warning would have caused Ataya to become aware of potential denaturalization risks, the evidence that Ataya nevertheless would have accepted the plea agreement after weighing the overwhelming evidence of his guilt and the attenuated danger of denaturalization forestalls the conclusion that there is "a reasonable probability that, but for the error, he would not have entered the plea."

---

[8]The record is silent as to whether Ataya ever stood trial on these charges and, if so, the outcome of that trial.

**III**

This discussion in no way condones the district court's failure to give each of the required Rule 11 warnings to Ataya.  It must be repeated, once again, "that compliance with Rule 11 is not a difficult task."  *United States v. Pattee*, 820 F.3d 496, 503 (6th Cir. 2016).  "[E]rrors can be avoided if a district or magistrate judge has a standard script for accepting guilty pleas," and "it should be a simple matter for district and magistrate judges to avoid any error by adhering literally to the script required by the Rule." *Ibid.*  While Rule 11 binds judges, responsibility for ensuring that Rule 11 warnings are properly given is not borne entirely by them, for "[p]rosecutors and defense attorneys also have an obligation to make sure that the Rule is followed," and counsel in future cases should take this obligation seriously. *Id.* at 502.

But the only issue we are asked to decide—whether failure to give the Rule 11(b)(1)(O) warning affected Ataya's substantial rights—is answered by both the policy decision of the drafters of Rule 11 to omit a denaturalization warning and the particular factual record in this case.  The sentencing judge's job is to be the referee of the defendant's plea—is it voluntary and knowing?—not a clairvoyant of the defendant's future.  Ataya's world undoubtedly would change if his guilty plea stands, but he has not shown that the district court failed to tell him anything about that new world to give us a legally cognizable reason to question the voluntariness and knowingness of the plea.

With due respect to my colleagues, I therefore dissent.