NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0578n.06

No. 17-5867

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,               )
                                        )
    Plaintiff-Appellant,                )
                                        )
v.                                      )
                                        )
MICHAEL BENANTI,                        )
                                        )
    Defendant-Appellee.                 )

**FILED**
Nov 20, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

Before: GILMAN, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge.   Michael Benanti was convicted of bank extortion, kidnapping, and carjacking, among other crimes.  He now argues that much of the evidence at trial should have been excluded—either because the police allegedly violated the Fourth Amendment, or because its admission violated Evidence Rule 403.  Benanti also argues that he was entitled to a new trial on grounds of prosecutorial misconduct.  We reject his arguments and affirm.

I.

From 2014 to 2015, Michael Benanti and Brian Witham executed a string of bank robberies.  The first was old-fashioned: the two men wore masks and brandished sawed-off shotguns while directing bank employees to give them cash from the vault.  The others were more like bank extortion: Benanti and Witham would kidnap a bank executive along with his family and—holding the family hostage—force the executive to bring them cash from the bank's vault. In 2015, for example, Benanti and Witham broke into the Tennessee home of a bank executive,

Tanner Harris, and took his wife and infant son hostage. Benanti and Witham ordered Harris to bring them money from the bank's vault, which Harris did in the amount of $190,000.

On September 3, 2015, two North Carolina State Highway Patrol cars tried to pull over Benanti and Witham (the driver) for speeding. Witham pulled onto the shoulder, but barely out of the traffic lane, and momentarily came to a stop. Then Benanti opened the passenger door. As the troopers pulled behind them, however, Witham sped away and before long struck three other vehicles. Benanti and Witham then fled into the woods on foot, carrying large black duffel bags. Police feared an ambush and gave up the chase.

Trooper Greg Reynolds, a North Carolina Highway Patrol officer, received the dash-cam footage of the September 3rd chase. He reviewed the footage between five and ten times, noting the chase's irregularity. He also noticed the passenger's appearance: white, heavy-set, with a bald spot on the back of his head.

Meanwhile, FBI agents joined the investigation, suspecting that the two men from the chase were the same men who had kidnapped a bank executive a few months before. The agents recovered a GPS device from the SUV that the men had crashed during the chase. From that device's memory, FBI agents obtained coordinates corresponding to an area near a cabin at 124 Rebel Ridge Road in Maggie Valley, North Carolina. The cabin's property manager told them that two men had rented the cabin and had recently moved to another at 380 Allison Drive.

State and federal agents began surveilling that address. Weeks later, they saw Benanti and Witham leave in a Pathfinder SUV with stolen license plates. The agents notified Reynolds that two men suspected of various bank robberies were traveling in a Pathfinder with stolen plates, and that the men were suspected to be the same ones who had fled on September 3rd. Soon Reynolds spotted the Pathfinder, confirmed that the plates were stolen, and turned on his emergency lights

and siren. As in the September 3rd chase, the vehicle pulled over, but barely out of the traffic lane. The passenger door opened. Out came a heavy-set white man with a bald spot on the back of his head. He was holding a large black duffel bag. The Pathfinder then sped back onto the highway, just as the SUV on September 3rd had done. But this time it left the passenger, Benanti, behind.

Reynolds arrested Benanti, thinking that he was the same passenger who had fled on September 3rd. From Benanti's clenched fist, Reynolds took a crumpled piece of paper that listed the names, home addresses, and bank addresses of three bank executives. In the duffle bag, the police found a camera, monocular scope, and rubber gloves. Meanwhile, police caught Witham. Officers searched the Pathfinder and found another GPS device, a smartphone labeled "Operations 1," and black gloves.

Officers then obtained a search warrant for the cabin at 380 Allison Drive, where they found more evidence. Eventually, a federal grand jury charged Benanti with 23 offenses, including conspiracy to commit robbery, armed bank extortion, carjacking, and kidnapping.

Before trial, Benanti filed two motions to suppress evidence: in the first, he argued that Reynolds did not have probable cause to arrest Benanti; in the second, that the affidavit in support of the warrant to search the cabin contained false information and failed to establish probable cause. Benanti also asked the district court for a *Franks* hearing as to whether the officers had used false information to obtain that warrant. The district court denied Benanti's motions, and thereafter conducted a trial with over 40 government witnesses—including Witham. The jury convicted Benanti of all charges. The court sentenced Benanti to four consecutive life sentences plus another 155 years' imprisonment. This appeal followed.

II.

A.

Benanti argues that the district court should have suppressed the evidence obtained as a result of his arrest, which Benanti says Reynolds made without probable cause. We review the district court's legal conclusions de novo, its factual findings for clear error, and consider the evidence in the light most favorable to the district court's decision. *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010).

To have probable cause for an arrest, an officer must "be aware of facts and circumstances sufficient to allow a prudent person to think the arrestee has committed or is about to commit a crime." *United States v. Price*, 841 F.3d 703, 706 (6th Cir. 2016) (internal quotation marks omitted). Benanti argues that such circumstances were absent here, asserting that, when Reynolds arrested him, Reynolds knew only that Benanti had been a passenger in an SUV with stolen plates. But Reynolds knew more than that. His supervisor had just informed him that the two men in the SUV were suspects from the September 3rd chase, and that they were on the road only fifty miles from where the chase had occurred. Moreover, after Reynolds pulled over the SUV, he noticed several similarities to the September 3rd encounter: both involved SUVs with stolen plates; both involved two white men; in both, the SUV stopped momentarily just outside the traffic lane, and then took off; and in both, the passenger was a white, heavy-set man with a bald spot, carrying a black duffel bag. These common circumstances gave Reynolds ample reason to think that Benanti was the same passenger who had fled from police in the chase on September 3rd. Reynolds therefore had probable cause to arrest him.

B.

Benanti similarly argues that the officers lacked probable cause for their search of the cabin at 380 Allison Drive, which they conducted pursuant to a warrant. We defer to a magistrate judge's finding of probable cause so long as there was a substantial basis for that finding. *See United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009).

To show probable cause for a search warrant, officers must give the magistrate judge an affidavit demonstrating "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (internal quotation marks omitted). Here, the affidavit summarized the entirety of the agents' investigation: the two abductions of bank employees in Knoxville, the September 3rd chase in a nearby area, Benanti's arrest shortly after leaving the cabin, the surveillance tools in his possession, and the crumpled note listing the names and addresses of three bank employees. These facts provided ample basis to search the cabin.

Benanti counters that the affidavit gave the magistrate judge no reason to think that the two abductions and bank robberies were both committed by the same two men. But the affidavit gave several reasons to think that the same men were at work. Both crimes occurred in Knoxville, only a few months apart. And in both, two masked men forced bank employees to rob their banks while the men instructed the employees on a cell phone. Benanti's argument is meritless.

C.

Benanti next challenges the district court's denial of his request for a *Franks* hearing. We review the court's legal conclusions de novo and its factual findings for clear error. *See United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015). To obtain a *Franks* hearing, a defendant must make a preliminary showing that the affidavit supporting a warrant contained recklessly or

knowingly false statements, and that the magistrate judge could not have found probable cause without those statements. *See Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

Benanti asserts that the affiant made several misrepresentations: for example, that the affiant failed to disclose that witnesses to the second bank robbery had reported a possible third culprit; that the affiant failed to disclose that witnesses to the second bank robbery had disagreed about one of the culprits' race; that the affiant failed to explain that the GPS device yielded a latitude and longitude rather than a precise address; and that the affiant falsely said that an officer had identified Witham as the driver from the September 3rd chase. But Benanti has failed to show that these alleged inaccuracies were knowing or reckless falsehoods. And the magistrate judge could easily have found probable cause without them. Hence Benanti's argument fails.

D.

Benanti argues that the district court erred by admitting evidence that he had frequented a strip club, cheated on his girlfriend, embezzled from his business, and engaged in fraudulent schemes that, he says, were unrelated to the bank robberies. Specifically, Witham testified at trial that, in between robberies, he and Benanti had visited a strip club in Roanoke, Virginia, and that Benanti had begun an intimate relationship with a dancer from that club. Witham also testified that Benanti had paid "for companionship," that Benanti had often met the dancer at hotels, and that he and Benanti had tried to hide the affair from Benanti's girlfriend—who later died.

The dancer herself testified that Benanti had paid her for "nude lap dances" and that they had met at hotels "six to ten times," where they would "kiss and stuff," but had stopped short of intercourse. The prosecution solicited considerable detail about these events, with questions like "how much would he give you each time y'all were together at the hotel?" and "[s]o the way you knew that his back and front body was shaved with the clippers is because he had his clothes off.

Is that correct?" The government also read the dancer a long series of text messages that she and Benanti had exchanged, asking her what each meant. Those messages included some texts about location, but also some that were sexually explicit, and another that Benanti sent after his girlfriend had died, which read in part: "I am making arrangements to spread her ashes in the Bahamas. Then I plan on coming to see you."

Witham also testified about several fraudulent schemes that he and Benanti had planned or committed before robbing banks. For example, they had plotted to kidnap a commodities broker and force him to ship gold to them, and they had also engaged in identity theft and credit card fraud. Witham further testified that Benanti had embezzled money from a business in which he managed money for inmates.

Benanti argues that the testimony about his relationship with the dancer violated Evidence Rule 403, which provides that a district court may exclude evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Benanti did not make that objection at trial, however, so we review the admission of this evidence for plain error. *See United States v. Ford*, 761 F.3d 641, 653 (6th Cir. 2014).

As for probative value, the government argues that this testimony corroborated Benanti's location and supplemented evidence about injuries that Benanti had sustained while fleeing on foot after the September 3rd chase (he fell in the woods). But much of the detail about Benanti's affair had nothing to do with either asserted purpose. And that testimony was unfairly prejudicial: it described in great detail his liaisons with a stripper whom he paid for sexual favors, while cheating

on a girlfriend who was soon to die. This prejudice overwhelmed whatever minimal probative value the testimony had. The admission of this testimony violated Rule 403.

But that error (plain or not) did not affect Benanti's substantial rights. *See United States v. Ataya*, 884 F.3d 318, 323 (6th Cir. 2018). The government's evidence against Benanti was overwhelming, including not least the testimony of his confederate, Witham.

Benanti's arguments about the other bad-acts evidence fail for the same reason. Whether properly admitted or not, that evidence made no difference to the outcome of Benanti's trial, given the government's other evidence of guilt. *See, e.g.*, *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008). Benanti therefore is not entitled to relief on these grounds.

E.

Finally, Benanti challenges the district court's denial of his motion for a new trial, which we review for an abuse of discretion. *See United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010).

Criminal Rule 33 allows the district court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. If the defendant asks for a new trial because of new evidence, the defendant must establish that the evidence was discovered after trial, could not have been discovered earlier with due diligence, is material and not cumulative, and would likely produce an acquittal in a new trial. *See United States v. Dubrule*, 822 F.3d 866, 885 (6th Cir. 2016).

Benanti argues that the district court should have granted a new trial, or at least an evidentiary hearing, because the prosecution falsely said that the GPS device provided a precise address, colluded with his defense attorney to obtain privileged information, fed the media false information to inflame the jury venire, and falsely told the jury that only two persons were involved in the crimes. But the record contradicts some of Benanti's assertions, and Benanti's new evidence

of misconduct is speculative. Moreover, the alleged misconduct is unlikely to have affected his trial's outcome. The district court thus did not abuse its discretion by denying Benanti's motion. *See United States v. Smith*, 749 F.3d 465, 493 (6th Cir. 2014); *Slagle v. Bagley*, 457 F.3d 501, 527 (6th Cir. 2006).

Benanti's convictions are affirmed.