In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――

No. 16-4046

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SERGIO MARGUERITO ZACAHUA,

*Defendant-Appellant.*

―――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cr-576-3 — **Robert M. Dow, Jr.**, *Judge.*

―――――――――――

ARGUED SEPTEMBER 23, 2019 — DECIDED OCTOBER 8, 2019

―――――――――――

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge*. Defendant-Appellant Sergio Zacahua requests that we vacate his guilty plea because the district court failed to inform him of the potential immigration consequences of his plea, as Federal Rule of Criminal Procedure 11(b)(1)(O) requires. The government concedes, and we agree, that the district court failed to give Zacahua this admonishment. But because Zacahua does not demonstrate a

reasonable probability that, had the district court provided this warning, he would not have pleaded guilty, we affirm.

I

Zacahua, a citizen of Mexico, has lived as an unauthorized alien in the United States for over 20 years. Although he was employed as a scrap worker and in the kitchen at Hilton hotels, Zacahua also transported heroin for a drug trafficking organization. In 2013, Zacahua and five codefendants were indicted in the United States District Court for the Northern District of Illinois for conspiracy to distribute heroin under 21 U.S.C. §§ 841(a)(1), 846.

On July 23, 2013, during Zacahua's bond hearing, the government invoked Zacahua's immigration status to support their argument that he was a serious flight risk. The government explained:

> Importantly, he is admittedly an undocumented alien and a citizen of Mexico. This increases the risk of flight for this defendant because he has significantly less ties here and strong ties to Mexico. Additionally, now that he's arrested, even if he were not convicted, he faces the likelihood of removal from the United States to Mexico. And thus, he must surely be questioning why he would stay in the United States to face a potentially long prison term only to end up in Mexico at the end of the day.

In ordering Zacahua's detention, the court highlighted his risk of deportation: "I give some credence to the government's argument that Mr. Zacahua really doesn't have any incentive to stick around if he's going to be deported anyway."

On March 22, 2016, the district court held a change of plea hearing pursuant to Federal Rule of Criminal Procedure 11. The district court advised Zacahua that he faced a mandatory minimum sentence of 120 months' imprisonment. The district court also informed Zacahua of the many rights he would give up by pleading guilty and some of the potential consequences of a felony conviction. But the district court never told Zacahua that he may be removed from the United States and denied admission in the future as a consequence of his guilty plea, as Rule 11(b)(1)(O) requires, and neither the prosecutor nor defense counsel prompted the court to make this admonishment. After confirming Zacahua was competent to enter a plea and that his plea was knowing and voluntary, the district court accepted Zacahua's guilty plea.

On April 8, 2016, just 17 days after Zacahua pleaded guilty, a Probation Officer interviewed Zacahua while preparing his presentence investigation report. During this interview, Zacahua acknowledged his unauthorized status and that he faced deportation. He told Probation that, when he returned to Mexico, he intended to apply to work at one of the Hilton hotels in Cabo San Lucas because of his extensive hospitality experience, and that he wished to return quickly to Mexico to care for his ailing parents.

Zacahua's sentencing hearing occurred on November 21, 2016. At the hearing, the district court acknowledged that Zacahua was "likely to be eligible for deportation." The court discussed Mr. Zacahua's employment prospects upon his return to Mexico: "I think if you are bilingual there are a lot of opportunities in Mexico, actually, to be a successful person in, really, any field where being even partially bilingual is helpful. … [I]t may make it easier for [you] to find and keep good

employment in Mexico." Later, the court stated, "I understand that you're accepting the responsibility for what you've done here and you would like this to get over with as fast as possible so you can return to Mexico." While discussing the § 3553(a) sentencing factors, the court explained, "In terms of deterrence, I think the deportation—the likely deportation—will make it unlikely that Mr. Zacahua would have the opportunity to commit further crimes here." As a condition of supervised release, the court imposed a requirement that Zacahua surrender to immigration authorities for a determination of deportability after his release.

Zacahua also embraced returning to Mexico as he addressed the court:

> And if I were to be deported the quickest possible, I would go to Mexico and I will not come back. I have now lost everything that I had here. My family. So I am now going back to Mexico to my parents. My dad just passed away. I did not see him. Now, I've got my mom who is left and to take care of her.

He never raised any concern about the district court's Rule 11 violation or his potential deportation. The district court sentenced him to the mandatory minimum sentence of 120 months.

Zacahua now wishes to withdraw his guilty plea. He therefore appeals his conviction.

## II

Because Zacahua let a Rule 11 error pass without objection in the trial court, he has forfeited this objection and must establish "plain error" to obtain relief on appeal. *United States*

*v. Vonn,* 535 U.S. 55, 59 (2002). Under plain error review, a defendant "will prevail if he can demonstrate that: (1) there was an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [the defendant's] substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Navarro*, 817 F.3d 494, 499 (7th Cir. 2015) (citing *Puckett v. United States,* 566 U.S. 129, 135 (2009)).

To obtain relief for an unpreserved Rule 11 error, a defendant "must do more than show that the Rule was technically violated. He must show that his guilty plea was involuntary and that he would not have entered it on the basis of the record as a whole." *United States v. Sura,* 511 F.3d 654, 660 (7th Cir. 2007). The error must have affected the defendant's "substantial rights," meaning that the "defendant is obliged to show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 76 (2004).

Zacahua argues that we should vacate his conviction because his guilty plea was not knowing and voluntary due to his lack of notice regarding the immigration consequences of his plea. Zacahua's argument that his plea was uninformed is entangled with his argument that the district court made a Rule 11 error.

Federal Rule of Criminal Procedure Rule 11(b)(1)(O) specifically requires that, before a court accepts a guilty plea, a district court must inform the defendant that "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." This provision was added to the rules in 2013, following the Supreme Court's

decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). FED. R. CRIM. P. 11(b)(1)(O); Committee note to 2013 amendments. In *Padilla*, the Supreme Court recognized that deportation is always "a particularly severe penalty." *Id.* at 365 (internal citation omitted). "[A]s a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty." *Id.* at 364. "[P]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Id.* at 368 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001)). Courts, however, "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded … . Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States,* 137 S. Ct. 1958, 1967 (2017).

The government concedes that the district court plainly failed to comply with Rule 11(b)(1)(O), and that Zacahua has therefore met the first two prongs of plain error review. But Zacahua cannot establish the third and fourth prongs of plain error review because (1) he knew he faced a high likelihood of deportation and (2) he cannot produce any "contemporaneous evidence" that substantiates his post-sentencing desire to withdraw his plea. First, at Zacahua's bond hearing, both the government and the court noted his immigration status and likely deportation. Thus, Zacahua had notice of his high risk of deportation prior to his change of plea hearing. Second, Zacahua's statements during his interview with his Probation Officer—only seventeen days after entering his guilty plea—and at his sentencing hearing demonstrated not only that he was aware he faced deportation, but that he accepted his eventual return to Mexico.

True, the evidence in the record demonstrates only that Zacahua was on notice that he likely faced deportation as a result of his *immigration status*. No evidence indicates that Zacahua was aware that his *conviction* would elevate his risk of deportation prior to entering his plea. Zacahua, however, has failed to present any evidence that had he known of the immigration consequences of his conviction, he would have been reasonably likely to proceed to trial. Indeed, on this record, his protests fall into the category of "*post hoc* assertions from a defendant about how he would have pleaded" that the Supreme Court discouraged in *Lee. Lee,* 137 S. Ct. at 1967.

The Sixth Circuit case that Zacahua cites in his defense—*United States v. Ataya*, 884 F.3d 318, 326 (6th Cir. 2018)—is inapplicable to this case. In *Ataya*, the district court judge similarly failed to inform a defendant during the plea colloquy that he would face immigration consequences—in his case, denaturalization—as a result of his conviction. *Ataya*, 884 F.3d at 324–25. The record in *Ataya*, however, contained sufficient "contemporaneous evidence in the record demonstrating a reasonable probability that Ataya in particular would not have pleaded guilty if he had notice of the potential adverse immigration consequences." *Id.* at 325. At sentencing, Ataya "articulated a strong, and very reasonable, aversion to his former homeland of Syria." *Id.* He explained how the ongoing civil war had displaced his relatives. *Id.* He also discussed how he is the "father of three minor children who reside in the United States, is an active parent, and is the family's breadwinner." *Id.* The contemporaneous concerns Ataya voiced about returning to Syria stand in stark contrast with Zacahua's desire for swift release from prison so he could return to Mexico to care for his mother.

Similarly, the Second Circuit case that Zacahua cites—*United States v. Gonzales*, 884 F.3d 457 (2d Cir. 2018) (per curiam)—is readily distinguishable. Gonzales initially learned through his PSR that he faced deportation after completing his sentence, and the record shows that he raised the issue with the court during his sentencing hearing after learning of this consequence. *Gonzales*, 884 F.3d at 459. Because Gonzales preserved his objection to the district court's Rule 11 error, the Second Circuit reviewed the record for "harmless error," rather than plain error. *Id.* at 461. Therefore, unlike this case, the burden rested with the government.

To explain that there is a reasonable likelihood he would have changed his sentence, Zacahua compares his situation to that of a co-defendant, Maria Moreno. Zacahua argues that, because Moreno also received a ten-year sentence after a jury convicted her on all counts at trial, he would have likely taken his chances at trial had he known of the immigration consequences of his guilty plea. But this argument is flawed. First, Moreno did not receive her sentence until November 20, 2017, nearly a year after Zacahua entered his guilty plea, making it impossible for him to have also considered Moreno's sentence when deciding whether to plead guilty. Second, even if timing were not an issue, it is impossible to tell to what extent Moreno's decision to proceed to trial influenced the judge's sentence. Moreno's sentence is therefore irrelevant to whether there is a reasonable probability Zacahua would have pleaded guilty had the district court informed him of the immigration consequences of his guilty plea.

We end by repeating an important note to district judges, prosecutors, and defense counsel. Although Zacahua was unable to demonstrate plain error on this record, omissions like

the one at issue in this case "are far from inconsequential and entirely preventable." *United States v. Polak*, 573 F.3d 428, 432 (7th Cir. 2009). To avoid this type of appeal in the future, we recommend that district court judges utilize a checklist that outlines the Rule 11 requirements at every plea colloquy they conduct. *See id.* at 432–33; *United States v. Stoller*, 827 F.3d 591, 597 (7th Cir. 2016); *United States v. Fard*, 775 F.3d 939, 947 (7th Cir. 2015); *United States v. Brown*, 571 F.3d 690, 695 (7th Cir. 2009).

Critically, we again emphasize that the prosecutor and defense counsel share the responsibility of ensuring the district court complies with the requirements of Rule 11. *See Polak*, 573 F.3d at 432. If the court inadvertently omits a required warning during the plea colloquy, counsel should alert the court before the court accepts the defendant's plea. *Id.*

### III

For the foregoing reasons, we **AFFIRM** Zacahua's conviction and sentence.