RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v*.

ALEXANDER RAMIREZ-FIGUEREDO,

                *Defendant-Appellant*.

No. 21-1221

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cr-00086-1—Paul Lewis Maloney, District Judge.

Argued: April 27, 2022

Decided and Filed: May 2, 2022

Before: GUY, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Daniel S. Harawa, Korbin W. Keller, Jonathan D. Puricelli, WASHINGTON UNIVERSITY, St. Louis, Missouri, for Appellant. Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Daniel S. Harawa, Kyle J. Davis, Korbin W. Keller, Jonathan D. Puricelli, WASHINGTON UNIVERSITY, St. Louis, Missouri, for Appellant. B. Rene Shekmer, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

CHAD A. READLER, Circuit Judge. Alexander Ramirez-Figueredo, a Cuban citizen, pleaded guilty to possessing methamphetamine with intent to distribute it and was sentenced to

192 months' imprisonment. He asks that we vacate his guilty plea because the district court did not advise him that the plea could make him deportable. Alternatively, he asks that we order resentencing because the district court did not consider his cooperation. But as Ramirez-Figueredo was already deportable when he pleaded guilty, and as the district court considered what minimal evidence of cooperation there was, we see no error by the district court. Accordingly, we affirm.

## BACKGROUND

Alexander Ramirez-Figueredo entered the United States from Cuba when he was 18 years old. Over the ensuing 25 years, he amassed an extensive criminal record. It began with Ramirez-Figueredo's 1997 conviction for delivery and manufacture of controlled substances. Next came his 1999 conviction for domestic violence and his 2000 conviction for assault with a dangerous weapon. Four years later, he added a conviction for retail fraud and another conviction for assault with a dangerous weapon. Three more convictions for retail fraud followed, as did convictions for stalking, assault and battery, disorderly conduct, possession of a switchblade, receiving stolen property, and possession of a controlled substance. To top things off, Ramirez-Figueredo has two convictions for indecent exposure. The first arose from an episode where he was purportedly masturbating while peering into the windows of a home. The second occurred after Ramirez-Figueredo exposed himself to a female student at the Lansing Community College library.

This appeal arises from Ramirez-Figueredo's first federal conviction. In March 2020, the Lansing, Michigan police department received a phone call from a woman who claimed that Ramirez-Figueredo had raped her and kept her in his home for two days. About a month later, officers arrested Ramirez-Figueredo. A search of the backpack he was carrying revealed nearly one kilogram of heroin and more than half a kilogram of pure methamphetamine. And following a reading of his *Miranda* rights, Ramirez-Figueredo confessed that the drugs were from the Sinaloa Cartel and that he intended to sell them. He also admitted to distributing methamphetamine, heroin, and cocaine in Lansing and took credit for introducing "blue meth" to the area.

State prosecutors charged Ramirez-Figueredo with several crimes related to the rape allegation and the drugs. Relevant here, he pleaded guilty to one count of "Controlled Substance Delivery/Manufacture Cocaine Heroin or Another Narcotic Less Than 50 Grams" in violation of Michigan law. A federal grand jury also indicted Ramirez-Figueredo on two counts of possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1)— one count for possessing heroin and another for possessing methamphetamine. In a written plea agreement, Ramirez-Figueredo agreed to plead guilty to the methamphetamine count if the government dismissed the heroin count. Two parts of that agreement deserve emphasis. One, Ramirez-Figueredo signed his name below text that reads, "My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement." Two, Ramirez-Figueredo's attorney signed below text reading, "I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement."

Consistent with the agreement, Ramirez-Figueredo pleaded guilty to count two. At a change of plea hearing, the district court performed a Rule 11 colloquy to ensure that Ramirez-Figueredo understood the allegations in the indictment, the maximum and minimum penalties, the rights that he was waiving by pleading guilty, the basics of federal sentencing law, and that he was in fact guilty of the charged offense. Contrary to Federal Rule of Criminal Procedure 11(b)(1)(O), however, the district court did not tell Ramirez-Figueredo that his guilty plea may have immigration-related consequences.

During his allocution at sentencing, Ramirez-Figueredo explained that before his arrest he had contacted the Drug Enforcement Administration (DEA) and asked to be an informant. Much to Ramirez-Figueredo's frustration, the DEA, he says, declined to set up a formal arrangement. He then illegally sold more drugs and purportedly gave the DEA his associates' names. The government, however, did not corroborate these statements. Ramirez-Figueredo's counsel clarified that after being indicted his client had cooperated and proffered, but that the government had not moved for a downward departure under U.S.S.G. § 5K1.1 for providing substantial assistance to an investigation or prosecution. After calculating an advisory Guidelines range of 168 to 210 months, the district court sentenced Ramirez-Figueredo to

192 months' imprisonment. In so doing, the district court indicated that it had "given no consideration" to any potential post-sentence motion filed in the future to reduce his sentence under Federal Rule of Criminal Procedure 35.

## DISCUSSION

### A.

Ramirez-Figueredo asks us to vacate his guilty plea because the district court did not tell him, as Federal Rule of Criminal Procedure 11(b)(1)(O) requires, that pleading guilty could have immigration-related consequences. As Ramirez-Figueredo did not raise the Rule 11 issue in district court, plain error review applies. *United States v. Vonn*, 535 U.S. 55, 59 (2002); Fed. R. Crim. P. 52(b). To prevail, Ramirez-Figueredo must establish four elements: (1) an error (2) that is "plain," (3) affected "substantial rights," and (4) "had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). Put simply, it "is difficult" to satisfy this demanding standard. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### 1.

The first two elements of plain error review are easily satisfied. Before accepting a guilty plea, Rule 11(b)(1) requires that the court "address the defendant personally in open court" to "inform the defendant of, and determine that the defendant understands," various aspects of federal law. That includes "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). But the district court did not give that warning to Ramirez-Figueredo. We agree with the parties that this omission satisfies the first two prongs of plain error review. *See United States v. Ataya*, 884 F.3d 318, 324 (6th Cir. 2018) (concluding "it is error if the district court fails to provide" the Rule 11(b)(1)(O) "warning during any defendant's plea colloquy").

But did this error affect Ramirez-Figueredo's substantial rights? To show that it did, Ramirez-Figueredo must establish "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). To make that evaluation, we must review "the entire record" and determine whether "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). This is akin to the *Strickland* standard for determining whether ineffective assistance of counsel prejudiced a criminal defendant. *See id.* Borrowing, then, from that line of jurisprudence, it bears noting that in the ineffective assistance of counsel context, *Lee v. United States* instructs us to pay close attention to two factors when deciding whether to vacate a guilty plea. 137 S. Ct. 1958, 1966 (2017). One, whether the defendant had "any viable defense," as if he has "no plausible chance" of acquittal, "it is highly likely that he [would] accept a plea if the Government [offered] one." *Id.* And two, the comparative consequences of a guilty plea and conviction at trial. *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 322–23 (2001)). For when these consequences are "similarly dire, even the smallest chance of success at trial may look attractive." *Id.*

In essence, we are trying to determine what Ramirez-Figueredo "would have done," cognizant that "even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." *Id.* at 1967. In making that determination, we set our sights on evidence that is "contemporaneous" with Ramirez-Figueredo's plea; we should not "upset a [guilty] plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for" the error in his proceedings. *Id.*; *see also United States v. Hobbs*, 953 F.3d 853, 858 (6th Cir. 2020).

Here, the *Lee* factors confirm that the Rule 11 error did not affect Ramirez-Figueredo's substantial rights. Start with the obvious: Ramirez-Figueredo is guilty of possessing methamphetamine with the intent to distribute it. Officers found him with more than half a kilogram of methamphetamine. And after being read his *Miranda* rights, Ramirez-Figueredo confessed in a recorded interview that he intended to sell the drugs on behalf of a Mexican drug cartel. With Ramirez-Figueredo failing to identify any defense to the charges, it is difficult to imagine a conviction that would be easier for a federal prosecutor to secure. We therefore find it

"highly likely" that Ramirez-Figueredo would have pleaded guilty even if the district court had given him the Rule 11(b)(1)(O) warning. *See Lee*, 137 S. Ct. at 1966.

That conclusion is all the more obvious when one considers the comparative consequences of a guilty plea and guilty verdict. Ramirez-Figueredo suggests that a proper Rule 11(b)(1)(O) warning might have caused him to assert his trial rights to avoid becoming deportable. But that strikes us as implausible because Ramirez-Figueredo seemingly was deportable when he pleaded guilty. To that end, federal law creates many classes of "deportable aliens." 8 U.S.C. § 1227. One class contains aliens convicted of a controlled substance offense, § 1227(a)(2)(B)(i), a class that would capture at least two of Ramirez-Figueredo's state law drug crimes. Another class includes aliens convicted of stalking, § 1227(a)(2)(E)(i), a crime to which Ramirez-Figueredo pleaded guilty years earlier. With Ramirez-Figueredo already falling into at least one of these classes of "deportable aliens," it simply is not believable that, without the Rule 11 error, Ramirez-Figueredo would have gone to trial with hopes of avoiding the unavoidable. *See Ataya*, 884 F.3d at 325 n.5 (quoting *Lee*, 137 S. Ct. at 1967). This is particularly true here because Ramirez-Figueredo offers no evidence that, notwithstanding his status as a deportable alien, his latest federal conviction makes it more likely that the government will deport him.

Nor has Ramirez-Figueredo offered contemporaneous evidence indicating that preventing deportation would have weighed on his decision to plead guilty. Conspicuously, the transcripts of Ramirez-Figueredo's change of plea hearing and sentencing hearing lack any discussion of his desire not to be deported. But Ramirez-Figueredo's plea agreement, which both he and his trial counsel signed, says that Ramirez-Figueredo's counsel "fully advised" him of the "consequences" of pleading guilty. With no evidence that these "consequences" did not include immigration-related consequences, as the Sixth Amendment customarily requires for effective assistance of counsel, we take Ramirez-Figueredo and counsel at their word. *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010) (instructing criminal defense attorneys to inform their clients whether pleading guilty "carries a risk of deportation"). As a result, the district court's Rule 11(b)(1)(O) error was not prejudicial, when compliance merely would have provided Ramirez-Figueredo with information he already knew.

All told, we are confident that the Rule 11 error had no effect on Ramirez-Figueredo's substantial rights.  Going to trial would almost certainly have resulted in a conviction, exposing Ramirez-Figueredo to a much longer prison term and washing away any chance at a three-level reduction in offense level for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1.  The latter result alone would have increased Ramirez-Figueredo's total offense level from 31 to 34; as a criminal history category V, his Guidelines range would have jumped from between 168 and 210 months to between 235 and 293 months.  *See* U.S.S.G. Ch.5, Pt.A.  These grave consequences are undoubtedly why, even now, Ramirez-Figueredo offers no sworn statement that he would have pleaded not guilty if the district court had not erred.  The Rule 11 error, in short, did not affect Ramirez-Figueredo's substantial rights.

**2.**

Ramirez-Figueredo resists our conclusion on numerous grounds.  He first says that several statements in his presentence report are contemporaneous evidence that he would not have pleaded guilty had the Rule 11(b)(1)(O) warning been issued.  Those statements describe Ramirez-Figueredo's childhood escape from Cuba, his family connections to the Lansing area, and his intent to reside there following his release from prison.  Ramirez-Figueredo urges that his case is analogous to *Ataya*, where we concluded that a Rule 11(b)(1)(O) error affected a defendant's substantial rights.  *See* 884 F.3d at 325–26.  *Ataya*, to be sure, has some superficial similarity to Ramirez-Figueredo's case.  But there is at least one major, and ultimately dispositive, difference, in assessing the substantial rights at stake:  Ramirez-Figueredo's guilty plea carried fundamentally different consequences than Ataya's.  For unlike Ataya, who would have faced denaturalization as a result of his uninformed guilty plea, Ramirez-Figueredo was already deportable when he pleaded guilty.

Next, Ramirez-Figueredo asserts that resting our decision on whether he was deportable at the time of his plea is contrary to Rule 11(b)(1)(O)'s purpose.  But that purpose is irrelevant to whether Ramirez-Figueredo showed a "reasonable probability" that he would have pleaded not guilty if the district court properly applied the rule, which he must do to show plain error.  *See* *Dominguez Benitez*, 542 U.S. at 83.

Along the same lines, Ramirez-Figueredo contends that Rule 11(b)(1)(O) error is "intended to protect the fairness and integrity of the judicial process," making compliance with the rule necessary to ensure "that a person only pleads guilty with full knowledge of the consequences." But for plain error purposes, this too has no bearing on whether the Rule 11 error affected his substantial rights. To the extent Ramirez-Figueredo argues that a Rule 11(b)(1)(O) error is a structural error requiring automatic reversal, both the text of Rule 11 and Supreme Court precedent squarely reject that view. *See* Fed. R. Crim. P. 11(h) (declaring that Rule 11 error is harmless unless it affects substantial rights); *see also Greer*, 141 S. Ct. at 2100 (noting that the failure to give a single Rule 11 warning is not structural error).

We also note that Ramirez-Figueredo considerably overstates what Rule 11(b)(1)(O) accomplishes. A district court must only tell the defendant that his guilty plea "may" have immigration-related consequences, not the specific consequences the plea would trigger. *See* Fed. R. Crim. P. 11(b)(1)(O). And even this minimally informative warning is far more than what the Constitution requires to establish that a defendant's guilty plea was knowing and voluntary. *See El-Nobani v. United States*, 287 F.3d 417, 420–21 (6th Cir. 2002) (concluding that the Fifth Amendment does not require a court to inform the defendant of the collateral immigration consequences of his guilty plea); *see also Ataya*, 884 F.3d at 323 n.3 (explaining that *El-Nobani* remains good law post-*Padilla*).

**B.**

Ramirez-Figueredo also asks that we vacate his sentence because the district court "failed to recognize" that it could consider his "extensive cooperation with law enforcement," both pre- and post-arrest. But as the record reflects that the district court did consider the limited evidence of Ramirez-Figueredo's cooperation, we reject his argument.

Ramirez-Figueredo frames his argument as raising a procedural reasonableness challenge. For a sentence to be procedurally reasonable, a court must calculate the correct Guidelines range, treat the Guidelines as advisory, consider the factors set forth in 18 U.S.C. § 3553(a), decline to consider impermissible factors, rely on facts that are not clearly erroneous, and give an adequate explanation for the sentence imposed. *United States v. Rayyan*,

885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We generally review procedural reasonableness under the "deferential abuse of discretion standard," *United States v. Hymes*, 19 F.4th 928, 932–33 (6th Cir. 2021), meaning we will reverse only when we have "a definite and firm conviction that the district court committed a clear error of judgment," *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (citation omitted). But plain error review applies to unpreserved procedural reasonableness arguments. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). That standard is even more deferential than the abuse of discretion yardstick in that we will reverse "only in exceptional circumstances to correct obvious errors that would result in a miscarriage of justice." *Hymes*, 19 F.4th at 932–33.

The parties debate whether Ramirez-Figueredo raised his specific objection regarding cooperation at sentencing. But for today's purposes, whether he preserved the issue is irrelevant. For even viewing Ramirez-Figueredo's claims under the more favorable abuse of discretion standard, we lack a "definite and firm conviction" that a "clear error of judgment" occurred. *See Perez-Rodriguez*, 960 F.3d at 753.

Here is what happened. Ramirez-Figueredo's sentencing memorandum noted that he had "entered into a cooperation agreement and proffered." He later told the district court at sentencing that he called the DEA to ask to be an informant, but that no formal arrangement was established. He continued to sell drugs illegally with the hope, he claims, of eventually working with the DEA. The government, however, did not corroborate this information. The district court asked Ramirez-Figueredo's lawyer to contextualize his client's statements. The lawyer explained that after Ramirez-Figueredo was indicted, he "set up a proffer" and "cooperated," yet the government did not move for a corresponding downward departure. Before imposing Ramirez-Figueredo's sentence, the district court stated that it had considered each of his arguments for a lower sentence.

The amount of explanation required from a district court when imposing a sentence depends "upon the circumstances of the particular case." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018). For example, when a sentencing argument is "conceptually simple" and the record reveals that the district court "considered the evidence and arguments,"

the court need not provide a "lengthy explanation" of how it resolved the issue. *Rita v. United States*, 551 U.S. 338, 356, 359 (2007). This is particularly true when a within-Guidelines sentence is imposed. *See Chavez-Meza*, 138 S. Ct. at 1964. Here, the district court's consideration of Ramirez-Figueredo's cooperation perhaps was terse. Then again, there was little to consider. The court knew that Ramirez-Figueredo had proffered, but neither party told the court if he had provided any truthful, let alone useful, information. In all, the district court did not fail to consider Ramirez-Figueredo's "extensive cooperation with law enforcement," because the court was not given any evidence of such cooperation. Indeed, over the course of the sentencing proceeding, Ramirez-Figueredo's trial counsel indicated he was "satisfied [that the district court had] addressed [his] sentencing requests." So are we.

Seeing things otherwise, Ramirez-Figueredo emphasizes a lone statement by the district court that it had "given no consideration" to a potential Rule 35 motion. He takes this to mean that the district court did not understand its discretion to consider cooperation as part of the § 3553(a) factors. Yet that view misunderstands the court's statement. Indeed, far from perpetrating reversible error, the district court was aiming to prevent it.

To explain, Federal Rule of Criminal Procedure 35(b)(1) permits a district court to reduce a defendant's sentence if, within one year after sentencing, the government files a motion indicating that the defendant "provided substantial assistance in investigating or prosecuting another person." By noting that his cooperation had "not resulted" in a motion for downward departure "at this point," Ramirez-Figueredo and his counsel raised the possibility of a future Rule 35(b) motion. But a Rule 35(b) motion may be made only after sentencing is complete, making it error for the district court to prematurely consider such a motion. *See United States v. Massey*, 663 F.3d 852, 860 (6th Cir. 2011). Placed in that context, the district court's comment about Rule 35 was nothing more than a correct statement of law made to exorcise the specter of reversible error hinted at by Ramirez-Figueredo. More than ten years ago, we faced the same issue in *Massey*. *See id.* The case, in fact, involved the same district judge. *Id.* And we resolved it the same way. *Id.* Had the district court not acted as it did, Ramirez-Figueredo would no doubt be claiming that the district court abused its discretion by considering the

Rule 35(b) issue at sentencing. *See United States v. Rosenbaum*, 585 F.3d 259, 264, 266 (6th Cir. 2009). All said, his sentence was procedurally reasonable.

\* \* \* \* \*

We affirm Ramirez-Figueredo's conviction and sentence.