NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0020n.06

No. 22-3951

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 17, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| TYLER BURRELL, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. A grand jury indicted Tyler Burrell for a drug offense that normally has a 5-year minimum sentence. At a pretrial hearing, though, the government noted its plan to file a superseding indictment that would treat one of Burrell's prior crimes as a "serious violent felony" and trigger a 10-year mandatory minimum. To avoid that result, Burrell pleaded guilty at the pretrial hearing. The district court imposed a 5-year sentence. On appeal, Burrell claims that none of his prior crimes qualified as a "serious violent felony" that would trigger the 10-year mandatory minimum. He thus argues that the district court misinformed him of his sentencing range during his plea hearing in violation of Federal Rule of Criminal Procedure 11(b). He also argues that he did not knowingly plead guilty because he believed that his prior crimes might trigger the 10-year minimum. But we must review these arguments for plain error because

Burrell did not preserve them. And he has not shown that he would have gone to trial if he had known that his prior crimes might not qualify as "serious violent felonies." So we affirm.

I

In late 2020, DEA agents began to investigate a large-scale drug-trafficking ring operating in and around Cleveland, Ohio. Their investigation eventually led a federal grand jury to indict 27 defendants on 40 total counts of drug, money-laundering, and firearm offenses.

The government charged Burrell, a low-level participant, in only the first count. This count alleged that he and his codefendants conspired to distribute illegal drugs from April 2020 to September 2021, in violation of 21 U.S.C. § 846. The indictment's 50 pages of factual allegations describing the conspiracy mentioned Burrell only a few times. According to the indictment, Burrell arranged for one coconspirator to purchase fentanyl pills from another coconspirator in early July 2021. A month later, the indictment further alleged, Burrell arranged for another transaction between the same two coconspirators of "55 grams of fentanyl branded as 30 milligram oxycodone pills." Sup. Indict., R.85, PageID 573.

As this complex conspiracy case progressed, the district court held a pretrial hearing to ensure that Burrell made an informed choice between standing trial and pleading guilty. At the start of this hearing, the court asked the prosecutor to explain Burrell's sentencing possibilities. According to the prosecutor, the drug quantities involved in Burrell's offense triggered a mandatory-minimum sentence of 5 years and a maximum potential sentence of 40 years. *See* 21 U.S.C. § 841(b)(1)(B). But the prosecutor added a critical caveat: He "believe[d]" that one of Burrell's prior offenses qualified as a "serious violent felony." Hr'g Tr., R.325-1, PageID 2078 (quoting 21 U.S.C. § 841(b)(1)(B)). If so, Burrell's mandatory minimum would jump to 10 years and his maximum sentence would jump to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).

To rely on this prior conviction, though, the prosecutor had to give adequate notice to Burrell. *See id.* § 851(a). Assuming that Burrell opted to "proceed to trial," the prosecutor planned to satisfy this notice requirement by obtaining a superseding indictment that referred to his prior offense. Hr'g Tr., R.325-1, PageID 2078. Later in the hearing, the prosecutor also indicated that he would seek the superseding indictment even if Burrell chose to plead guilty in a few weeks. In response to a court inquiry, however, the prosecutor conceded that he could not "stop" Burrell from pleading guilty right then and there to prevent this increased potential punishment. *Id.*, PageID 2082.

The court next summarized the government's position for Burrell. It started to explain what the government would do if Burrell stood trial. But Burrell interrupted the court by noting that he did not "want to go to trial." *Id.*, PageID 2084. Nevertheless, the court reiterated that the government would obtain a superseding indictment and that Burrell would be "looking at a mandatory minimum of 10 years." *Id.* The court also clarified that the government might soon obtain the superseding indictment no matter what Burrell chose. It thus suggested that Burrell could guarantee that he would not face this sentencing enhancement in only one way: by pleading guilty before the prosecutor "got this back into the grand jury[.]" *Id.*, PageID 2099. Burrell then asked: "[S]o if I plead guilty just to the indictment right now, can I avoid the enhancement?" *Id.* The court directed this question to the prosecutor, who conceded that he did not "have any way of stopping" Burrell from immediately pleading guilty. *Id.*

At that point, Burrell expressed his preference to "plead right now" to avoid the sentencing enhancement. *Id.*, PageID 2100. He explained that he did not "want to turn 60 months into 120 months" given his small children. *Id.*, PageID 2100–01.

The court thus turned the pretrial hearing into a plea hearing. At the start of this revised hearing, the prosecutor explained the "factual basis" for the plea. Plea Tr., R.325, PageID 2060–

61. He reiterated the indictment's allegations that Burrell had arranged for the purchase of fentanyl designed to look like prescription pills. *Id.* He also suggested that Burrell himself had "possessed" the pills and redistributed them. *Id.*, PageID 2061.

The court next engaged in a standard colloquy with Burrell to satisfy Federal Rule of Criminal Procedure 11. *See* Fed. R. Crim. P. 11(b)(1)–(3). The court ensured that Burrell knew of the many rights that he would waive by pleading guilty. It also ensured that Burrell knew of the statutory 5-to-40-year sentencing range for his conspiracy offense under the operative indictment to which he was pleading guilty.

That said, the colloquy did reveal two points of contention. When asked if he was satisfied with his attorney's efforts, Burrell said: "Not really." Plea Tr., R.325, PageID 2064. This response led the court to suggest that it could not accept his plea. So Burrell backtracked by saying that he was "satisfied" because his lawyer had "told the truth." *Id.* Next, when asked if he agreed with the prosecutor's factual basis for his plea, Burrell challenged two aspects of it. He claimed that no coconspirator had ever given him fentanyl-laced pills and that he had never personally resold those pills. The prosecutor clarified that the court could still accept the plea as long as Burrell admitted "that he intended to engage in this conspiracy," that he "directed" a coconspirator "to pick up controlled substances," and that the "ultimate purpose" of this transaction "was going to be the redistribution of the substances[.]" *Id.*, PageID 2070. Burrell conceded these narrower allegations.

After this extended colloquy, Burrell pleaded guilty. He also assured the court that nobody had made any promises or threats to get him to do so. And he agreed that he pleaded guilty voluntarily. The court thus accepted the plea.

At sentencing, the court calculated Burrell's guidelines range as 46 to 57 months' imprisonment. But Burrell's offense triggered a statutory minimum of 60 months, so that term

became his guidelines sentence. When it came time for Burrell to speak, he indicated that he had "a lot" to say. Sent. Tr., R.526, PageID 3776. He suggested that he had learned only after pleading guilty that he was "not even eligible for [the sentencing] enhancement" that the government had threatened to seek. *Id.* He also explained that he had "wanted to take more time to" decide whether to go to trial. *Id.*, PageID 3778. The court cut him off, saying that Burrell did not have to plead guilty and that he had voluntarily done so. Burrell conceded as much. After more discussion from the attorneys, the court ultimately sentenced Burrell to the minimum 60-month sentence.

## II

On appeal, Burrell asserts that the district court and parties mistakenly believed that he qualified for the sentencing enhancement that covers defendants who have previously committed a "serious violent felony." 21 U.S.C. § 841(b)(1)(B). This argument undergirds Burrell's two claims of error: that the court violated Federal Rule of Criminal Procedure 11(b) and that he did not enter a knowing and voluntary plea. These two claims fail because Burrell did not preserve them and cannot satisfy the demanding plain-error test.

## A

Burrell's arguments are so complex that we must dedicate an entire subsection just to describe them. His arguments begin with the sentencing provisions of the federal drug laws. Those laws tie the length of a defendant's sentence to the amount of drugs involved in the offense. 21 U.S.C. § 841(b). Drug quantities falling within § 841(b)(1)(B) generally trigger a 5-year minimum and a 40-year maximum. But this statute increases the minimum sentence to 10 years and the maximum to life if the defendant has committed a "serious violent felony." *Id.*

What offenses count as a "serious violent felony"? The federal drug laws define that phrase through a byzantine chain of cross-references. The general "definitions" section of the drug laws

starts this chain. It defines "serious violent felony" in part as "an offense described in section 3559(c)(2) of Title 18 for which the offender served a term of imprisonment of more than 12 months[.]" 21 U.S.C. § 802(58). The cited section next defines "serious violent felony" to include all "Federal or State" crimes "consisting of" (as relevant to Burrell's prior crimes) "robbery" "as described in" 18 U.S.C. § 2111. 18 U.S.C. § 3559(c)(2)(F)(i). Lastly, § 2111 punishes a defendant "who[], . . . by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value[.]" *Id.* § 2111.

Which of Burrell's prior felonies did the government believe satisfied this definition? The record leaves the answer unclear. On appeal, however, the government relies on only one of Burrell's crimes: his conviction for complicity to commit aggravated robbery, in violation of Ohio Revised Code § 2911.01(A)(3). (Burrell's presentence report suggested that he violated § 2911.01(A)*(1)*, but both parties agree that the state records show he pleaded guilty to violating § 2911.01(A)*(3)*.) This Ohio aggravated-robbery statute provides: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: . . . (3) Inflict, or attempt to inflict, serious physical harm on another." Ohio Rev. Code § 2911.01(A)(3). Ohio law lists over 30 theft offenses that can support an aggravated-robbery conviction if the defendant inflicted or attempted to inflict serious physical harm during the offense. *See id.* § 2913.01(K); *United States v. Wilson*, 978 F.3d 990, 995–96 (6th Cir. 2020). And Ohio law defines "serious physical harm" to include both physical and mental injuries. *See United States v. Burris*, 912 F.3d 386, 394 (6th Cir. 2019) (en banc).

To decide whether this aggravated-robbery offense "consist[s] of" "robbery" "as described in" 18 U.S.C. § 2111, Burrell argues that we must compare the elements of the state and federal

6

crimes. 18 U.S.C. § 3559(c)(2)(F)(i). If the state crime reaches more conduct than the federal one, Burrell claims, the former does not "consist[] of" the latter. *Id.*; *see United States v. Wehmhoefer*, 835 F. App'x 208, 211 (9th Cir. 2020) (mem.). He next argues that the federal robbery statute (§ 2111) requires knowing or intentional (not reckless) behavior. *See Wehmhoefer*, 835 F. App'x at 211. Yet, according to Burrell, the Ohio aggravated-robbery statute adopts the mens rea of the theft offense alleged as the predicate crime. *See Wilson*, 978 F.3d at 998–99. Because his state records leave that underlying offense unclear in his case, Burrell lastly argues, we must assume that he could have committed *any* of the 30 or so qualifying theft offenses. And he assumes that at least one of these offenses has a reckless (or lower) mens rea that would disqualify it as a "robbery" under § 2111.

At this point, one might wonder why Burrell even raises this statutory claim. After all, the district court did *not* treat his prior Ohio aggravated-robbery offense as a "serious violent felony" and did *not* impose the increased 10-year minimum sentence that would result if it had. Burrell offers two theories to explain why the court nevertheless erred by assuming that his Ohio offense qualified as a "serious violent felony" before it turned his pretrial hearing into a plea hearing.

Theory One: Federal Rule of Criminal Procedure 11 sets the ground rules for district courts when they accept guilty pleas. As relevant here, it requires courts to ensure that a defendant "understands" both "any maximum possible penalty" and "any mandatory minimum penalty" that the defendant would face by pleading guilty. Fed. R. Crim. P. 11(b)(1)(H)–(I). Burrell argues that the court violated these mandates at the pretrial hearing because it wrongly suggested that he could face a 10-year minimum and a maximum of life imprisonment if he did not plead guilty.

Theory Two: The Constitution requires that a defendant knowingly and voluntarily plead guilty. *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *Brady v. United States*, 397 U.S. 742,

7

748 (1970); *United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021). According to Burrell, defendants do not enter knowing pleas if they do so based on a misunderstanding of the maximum exposure that they would face by standing trial. *See United States v. Mitchell*, 398 F. App'x 159, 162 (6th Cir. 2010); *Pitts v. United States*, 763 F.2d 197, 200–01 (6th Cir. 1985) (per curiam). This rule applies here, Burrell claims, because he believed that he would face the greater statutory ranges triggered by the sentencing enhancement if he did not plead guilty.

B

Burrell has raised two clever theories. The problem? He asserts them at the wrong time and in the wrong court. Burrell never argued in the district court that it had violated Rule 11(b)'s notice requirements. Nor did he ever argue that he had entered an unknowing guilty plea or move to withdraw that plea. We typically review unpreserved claims that a district court violated Rule 11 or that a defendant did not knowingly plead guilty under the deferential plain-error test. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *Presley*, 18 F.4th at 903; *United States v. Williams*, 796 F. App'x 270, 272 (6th Cir. 2019).

To argue that he preserved these claims, Burrell makes factual and legal contentions. Factually, Burrell points to a statement that he made at his sentencing hearing. He noted: "I was not even eligible for [the sentencing] enhancement. I didn't know that at the time." Sent. Tr., R.526, PageID 3776. To preserve a claim, however, a defendant must make arguments with the "specificity" required to alert the district court of the claim's nature. *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (citation omitted); *see* Fed. R. Crim. P. 51(b). Burrell's passing reference at sentencing to his then-current view that he was ineligible for the enhancement did not inform the district court that he might have unknowingly pleaded guilty or that the court might have violated Rule 11(b).

Legally, Burrell relies on *United States v. Hogg*, 723 F.3d 730 (6th Cir. 2013). Yet the defendant in *Hogg* did eventually assert in the district court the Rule 11 argument that he later raised on appeal—albeit in a belated manner in a motion to withdraw his guilty plea. *Id.* at 738. Burrell, by contrast, never specifically raised his two claims or moved to withdraw his plea. We thus will review those claims for plain error.

The plain-error standard requires Burrell to establish four well-known elements. *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). The district court must have committed an "error." *Id.* (citation omitted). This error must have been "obvious[.]" *Id.* The error must have harmed his "substantial rights." *Id.* And the error must have undermined the "fairness, integrity or public reputation of the judicial proceedings." *Id.*

We are not at all sure that Burrell has shown an error, let alone an obvious one. As one example, he relies almost entirely on an unpublished Ninth Circuit case to support his claim that his Ohio aggravated-robbery offense is not a "serious violent felony." *See Wehmhoefer*, 835 F. App'x at 211. But the complexity of this statutory-interpretation question makes it hard to see how any error could be described as "obvious" without an on-point precedent of our own. *Cf. United States v. al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). As another example, Burrell argues that the notice provisions in Rule 11(b)(1)(H) and (I) required the district court to notify him of the proper sentencing range under a hypothetical *future* indictment that the prosecutor had yet to obtain. But the district court was not even informed as to which of Burrell's prior offenses might qualify for the sentencing enhancement. So the court could not have been expected to determine the proper sentencing range based on unidentified prior convictions. And one could argue that the district court complied with the plain text of Rule 11's notice provisions by ensuring that Burrell

9

understood that his guilty plea would trigger the 5-year mandatory minimum and 40-year maximum punishment under the *current* indictment.

At day's end, though, we need not consider the first two elements of plain-error review. Burrell cannot establish the third ("substantial rights") element. *See Presley*, 18 F.4th at 904. This element requires him to show that the claimed errors prejudiced the result of his case. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004). When defendants assert that a district court violated a notice provision in Rule 11(b) or when they assert that they lacked information that was necessary for them to enter a knowing plea, this prejudice inquiry asks the same question: Does a "reasonable probability" exist that a defendant "would not have entered the plea" if the court had complied with Rule 11(b) or if the plea had been knowing? *See id.* at 83; *Hobbs*, 953 F.3d at 857. To show this "reasonable probability," Burrell must rely on "contemporaneous evidence" from the district-court proceedings signaling that he would have stood trial—not "*post hoc* assertions" in his appellate briefing. *Hobbs*, 953 F.3d at 857 (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)); *see United States v. Ramirez-Figueredo*, 33 F.4th 312, 316 (6th Cir. 2022).

Notably, however, Burrell does not even rely on *post hoc* assertions. His appellate briefs conspicuously do not assert that he wants a jury trial now that he knows he could argue that his Ohio aggravated-robbery offense might not qualify as a "serious violent felony." Indeed, we have no idea what remedy he seeks. He asks us to vacate his plea and remand "for further proceedings." Appellant's Br. 25; Reply Br. 11. Proceedings to do what? Enter the same plea?

Regardless, the "contemporaneous evidence" at the pretrial-turned-plea hearing shows that he would have pleaded guilty even if he had known that he could argue that his Ohio aggravated-robbery conviction did not count as a "serious violent felony." *See Hobbs*, 953 F.3d at 857 (quoting *Lee*, 582 U.S. at 369). When the district court started to articulate the consequences if

Burrell stood trial, he cut the court off: "Your Honor, I don't wish to dishonor the Court, but I don't want to go to trial." Hr'g Tr., R.325-1, PageID 2084. He made this claim *before* the court noted that he was "looking at a mandatory minimum of 10 years" if he proceeded to trial. *Id.*

A broader look at "the entire record" proves the same. *Ramirez-Figueredo*, 33 F.4th at 316 (quoting *Dominguez Benitez*, 542 U.S. at 83). Burrell knew that his prior offenses might not qualify as "serious violent felonies" by the time of the final judgment. At sentencing, he stated that he had not been "eligible" for the sentencing enhancement. Sent. Tr., R.526, PageID 3776. Yet Burrell did not move to withdraw his guilty plea in light of this new belief. *Cf. United States v. Austin*, 830 F. App'x 460, 462–63 (6th Cir. 2020). Instead, he reaffirmed that he had entered a "knowing, intelligent, voluntary plea" later in the same sentencing hearing. Sent. Tr., R.526, PageID 3779. So even though he knew that he might not qualify for the enhancement, he made no claim that he wanted a trial or that he had pleaded guilty because of a mistaken view of the law. In sum, Burrell has never "expressed" a "preference[]" for trial either in the district court or on appeal. *Presley*, 18 F.4th at 906 (quoting *Hobbs*, 953 F.3d at 857).

The reality that Burrell had little to gain—and a lot to lose—by standing trial confirms that he would not have done so even if he had known at his plea hearing that he could argue against the serious-violent-felony enhancement. *See Ramirez-Figueredo*, 33 F.4th at 316. To begin with, Burrell does not identify "any viable defense" that he could have presented at trial. *Id.* (quoting *Lee*, 582 U.S. at 367). Next, Burrell's decision to plead guilty deprived the government of any ability to seek a 10-year mandatory-minimum sentence. If he had stood trial, by contrast, the government at least would have argued for that enhancement. Given the legal uncertainty on this issue, Burrell thus would have risked subjecting himself to a much longer mandatory minimum. Lastly, Burrell's guilty plea allowed him to obtain acceptance-of-responsibility credit under the

Sentencing Guidelines and ultimately a 5-year sentence—the lowest possible allowed by law. 21 U.S.C. § 841(b)(1)(B). Even if the district court agreed with Burrell that he did not qualify for the 10-year mandatory minimum, Burrell still likely would have lost the acceptance-of-responsibility credit by going to trial. *See Wallace v. United States*, 43 F.4th 595, 607–08 (6th Cir. 2022). In fact, Burrell does not dispute the government's claim that his guidelines range would have jumped to 63 to 78 months if he had put the government to its proof. So a decision to stand trial would have all but guaranteed Burrell a longer sentence. Any rational person would have pleaded guilty under these circumstances. *See Lee*, 582 U.S. at 367.

Burrell responds with a pair of statements that he made at his pretrial and sentencing hearings. At his pretrial hearing, he told the district court that he had been asking his attorney about how much time he would "get" if he stood trial. Hr'g Tr., R.325-1, PageID 2083. At his sentencing hearing, he told the court that he had "wanted" to ask his attorney whether he should "take more time to proceed to go to trial." Sent. Tr., R.526, PageID 3778. When considered against all the contrary evidence, these equivocal statements do not create a "reasonable probability" that Burrell would have stood trial if he had known that he could argue against the serious-violent-felony enhancement. *Dominguez Benitez*, 542 U.S. at 83.

We affirm.

12