RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v.*

KARNAIL SINGH,

                *Defendant-Appellant*.

No. 23-1474

───────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:13-cr-20551-1—David M. Lawson, District Judge.

Decided and Filed:  March 15, 2024

Before:  GRIFFIN, THAPAR, and NALBANDIAN, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Firooz T. Namei, MCKINNEY & NAMEI CO., LPA, Cincinnati, Ohio, for Appellant.  Jessica Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

### OPINION

─────────────────

THAPAR, Circuit Judge.  Karnail Singh seeks to set aside his conviction, claiming he would not have pled guilty had he known the plea would affect his citizenship.  But when entering the plea, Singh said he'd plead guilty regardless of the immigration consequences. We affirm.

I.

After illegally entering the United States, Karnail Singh applied for asylum. The government denied Singh's application and ordered him deported.

While deportation proceedings were pending, Singh submitted a second asylum application. This time, he used a different name, birthdate, birthplace, and parents. Singh then married a U.S. citizen and, using the updated biographical information, applied for permanent resident status. In his residency application, Singh claimed he'd never been denied asylum or provided false information on an immigration form.

The government granted Singh's application for residency, and, after a few years, Singh became a citizen. He later acquired a passport, which he used to reenter the United States after traveling abroad. At the border, officials asked Singh if he'd ever used a different name or birthdate. Singh said no.

At some point, the government discovered Singh hadn't been honest. So the government charged him with using a fraudulently procured passport and making false statements to immigration officials. *See* 18 U.S.C. §§ 1001(a)(2), 1546(a).

Singh pled guilty to using a fraudulently procured passport. In exchange for Singh's plea, the government dismissed the false-statement count and agreed to a lower sentencing range. As part of the agreement, Singh acknowledged that, while pleading guilty would "not necessarily result in immigration consequences," it could affect his removability "in conjunction with possible future criminal charges." R. 16, Pg. ID 43. Singh alleges he and his counsel interpreted that provision to mean his citizenship was safe unless he committed another crime. But Singh also confirmed his decision to plead guilty was "wholly independent of the immigration consequences." *Id.* at 44. And when the district court informed Singh that the plea "can be used . . . to cancel your citizenship," Singh twice confirmed that he understood and entered his guilty plea anyway. R. 22, Pg. ID 127.

Later, the government began proceedings to revoke Singh's citizenship. In response, Singh petitioned for a writ of coram nobis, asking the district court to set aside his conviction. The district court denied his petition. Singh appeals.

II.

A criminal defendant may seek a writ of coram nobis to set aside an erroneous conviction. *United States v. Morgan*, 346 U.S. 502, 512 (1954). But the writ is an "extraordinary remedy" used only to correct errors "of the most fundamental character." *Id.* at 511–12 (quotation omitted). To get the writ, Singh must show (1) an error occurred during the proceedings that calls the validity of his conviction into doubt; (2) he has no alternative remedy to correct the error; (3) he has good reasons for not seeking to correct the error earlier; and (4) his conviction is causing an ongoing civil disability. *United States v. Castano*, 906 F.3d 458, 464 (6th Cir. 2018).

Singh fails at step one: the district court didn't commit a fundamental error.

A.

Singh first claims his plea violated the Due Process Clause because he incorrectly believed the plea would affect his citizenship only if he committed another crime.

Since guilty pleas waive several constitutional rights, the Due Process Clause requires that guilty pleas be "knowing." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Thus, before accepting a plea, a district court must ensure the defendant understands the "direct" consequences of pleading guilty. *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002). On the other hand, a court need not inform the defendant of every "collateral" consequence. *Id.* After all, convictions have many consequences, and a defendant doesn't need to appreciate every one to make an informed (i.e., "knowing") decision to forgo trial. *See id.* We've held that immigration consequences fall within this latter category. *Id.*; *United States v. Ramirez-Figueredo*, 33 F.4th 312, 318 (6th Cir. 2022). That is, Singh's plea qualifies as knowing, and satisfies due process, whether or not he understood it could affect his citizenship. That forecloses Singh's due process claim.

B.

Singh also claims the district court violated Rule 11 of the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 11(b)(1)(O).  Under our Rule 11 precedent, district courts must give defendants a "generic warning" that pleading guilty "may" have "immigration-related consequences."  *United States v. Ataya*, 884 F.3d 318, 324 (6th Cir. 2018); *Ramirez-Figueredo*, 33 F.4th at 318.  Specifically, Rule 11 requires the district court to inform the defendant that, if convicted, he "may be removed from the United States, denied citizenship, and denied admission to the United States in the future."  Fed. R. Crim. P. 11(b)(1)(O).

The district court gave the required warning.  At the plea hearing, the court told Singh his plea "can be used if the immigration services bring a petition to cancel your citizenship."  R. 22, Pg. ID 127.  Singh said he understood.  To confirm, the district court asked Singh again, "You know that?"  *Id.*  Singh confirmed that he understood his plea could lead to his denaturalization.  Thus, the court complied with Rule 11.

In response, Singh points to the written plea agreement, which he interprets as allowing the government to denaturalize him if and only if he were to commit another crime.[1]  He alleges his counsel and the prosecutor confirmed this interpretation.  Because Singh "reasonably believed" the plea would affect his citizenship only if he committed another crime, he argues the district court had to do more to correct his misunderstanding.  Appellant Br. 16.

But Rule 11 requires no such thing.  As explained, Rule 11 requires only a "generic warning" that pleading guilty "may" have immigration consequences.  *Ataya*, 884 F.3d at 324.  Thus, the court didn't need to detail how, when, or under what circumstances those consequences could occur.  *See id.*  Nor did the court need to "anticipate and negate" Singh's misunderstandings about those specifics.  *Cf. United States v. Carson*, 32 F.4th 615, 623 (6th Cir. 2022).

---

[1]Based on this interpretation, Singh asked the district court to hold that the government breached the plea agreement by seeking his denaturalization.  He raised the same claim in the district court where his denaturalization proceedings are pending.  Both district courts rejected Singh's interpretation.  R. 34, Pg. ID 338–39; *United States v. Singh*, No. 2:18-cv-85 (WOB), 2019 WL 1212880, at *10–13 (E.D. Ky. Mar. 14, 2019).  Singh hasn't raised that claim in this appeal, so we don't address it.

Singh also quibbles with the language the district court used in its Rule 11 warning.  The court warned Singh that "this guilty plea has—well, it does have an effect, I guess—can be used if the immigration services bring a petition to cancel your citizenship."  R. 22, Pg. ID 127.  Because the court used the phrase "I guess," Singh argues the court must not have known whether Singh's plea could affect his citizenship.  But even if that were true, it wouldn't pose a problem.  The court had to state only that Singh's plea "may" have immigration consequences. *Ataya*, 884 F.3d at 324.  It didn't need to know what those consequences were going to be.  For good reason:  immigration law is "complex" and "a legal specialty of its own." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).   And whether a defendant will face immigration consequences depends not only on the law, but also on executive policies and the current state of foreign affairs. *See, e.g.*, *Rodriguez-Penton v. United States*, 905 F.3d 481, 491 n.1 (6th Cir. 2018) (Thapar, J., dissenting).  Thus, the court didn't need to predict whether Singh's plea would ultimately affect his citizenship.

C.

Next, Singh claims he was deprived the effective assistance of counsel because his attorney erroneously told him the plea wouldn't affect his citizenship unless he committed another crime.[2] *See Strickland v. Washington*, 466 U.S. 668 (1984).

To succeed on this claim, Singh must point to evidence showing a "reasonable probability" that, but for his counsel's error, he wouldn't have pled guilty and instead would have gone to trial. *Hill*, 474 U.S. at 59.  This test has several components.  Singh must demonstrate that going to trial "would have been rational" under the circumstances of his case. *Lee v. United States*, 582 U.S. 357, 370 (2017) (quotation omitted); *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012).  That inquiry is objective, not subjective. *Kimbrough v. United States*, 71 F.4th 468, 473 (6th Cir. 2023).  Next, Singh must point to evidence contemporaneous with his plea showing it's reasonably likely *he* would have taken that route. *Lee*, 582 U.S. at

---

[2]Singh frames this claim as both a Sixth Amendment issue (he was deprived the effective assistance of counsel) and a due process issue (his plea wasn't knowing because his counsel misinformed him).  We analyze both versions under the ineffective-assistance-of-counsel rubric. *United States v. Pola*, 703 F. App'x 414, 417 (6th Cir. 2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)).

369. Only in "unusual circumstances" will a defendant who conceded guilt at the plea stage be able to meet this "high bar." *Id.* at 368–69 (quotation omitted).

Singh doesn't. To be sure, Singh states he wouldn't have pled guilty had he known denaturalization was possible. "By his own recollection," he continues, he was "greatly concerned" about his citizenship and communicated that concern to his counsel, the government, and the district court. Appellant Br. 27. But Singh's appellate briefing doesn't cite any evidence contemporaneous with his plea to support these assertions. And post hoc assertions that he would've opted for trial aren't enough. *Lee*, 582 U.S. at 369.

In any event, the contemporaneous evidence cuts against Singh. In the written plea agreement, Singh stated his decision to plead guilty was in "no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences." R. 16, Pg. ID 43–44. Singh confirmed: his decision to plead was "wholly independent of the immigration consequences of a conviction." *Id.* at 44; *see Ramirez-Figueredo*, 33 F.4th at 317 (relying on similar language in a plea agreement). And when the district court told Singh the plea could affect his citizenship, Singh expressed no reservations, twice confirmed that he understood, and pled guilty anyway. *Cf. Lee*, 582 U.S. at 369. In the face of this evidence, Singh can't demonstrate a reasonable probability that, but for his counsel's advice, he would have proceeded to trial.

In response, Singh argues his counsel's advice prejudiced him in another way: but for that advice, Singh claims he could've negotiated a better plea deal. *See Rodriguez-Penton*, 905 F.3d at 488. Under our precedent, defendants can show prejudice by establishing that, but for counsel's advice, it's reasonably probable they would've rejected the government's plea offer and successfully negotiated a better one. *Id.* at 488, 490; *Byrd v. Skipper*, 940 F.3d 248, 260 (6th Cir. 2019). But this too is a difficult standard to meet. At a minimum, a defendant must show, based on contemporaneous evidence, that it's reasonably probable he would've rejected the plea offer, the government would've offered a better one, he would've accepted that offer, and the trial court would've approved the deal. *See Byrd*, 940 F.3d at 259. *But see id.* at 262 (Griffin, J., dissenting) (noting a defendant must also show the government in fact made an initial plea offer). Rarely will a defendant make this showing.

For the same reasons Singh fails to show he would have rejected the plea offer and gone to trial, he likewise fails to show that he would have rejected the plea offer and negotiated for a better deal. Again, Singh argues his counsel should have told him that pleading guilty could affect his citizenship. But the court gave Singh that very warning. And Singh pled guilty anyway. Thus, Singh can't show he would've rejected the plea had his counsel told him pleading guilty might affect his citizenship. *Cf. Rodriguez-Penton*, 905 F.3d at 488 (noting the defendant didn't "know[] about the risk of adverse immigration consequences").

In sum, Singh can't show it's reasonably probable that, but for his counsel's immigration advice, the outcome of his proceedings would be different.

III.

Finally, Singh argues the district court should have held a hearing before ruling on his coram nobis petition. But the record makes clear that Singh isn't entitled to coram nobis relief. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Thus, the court didn't need to hold a hearing before denying his petition. *See id.*

\* \* \*

We affirm.